WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Acencion Leon, | No. CV 11-0129-TUC-BPV |
| Petitioner, | **ORDER** |
| vs. | |
| Charles Ryan, et al., | |
| Respondent. | |

Petitioner, Jose Acencion Leon, presently confined in the Arizona State Prison Complex, Central Unit, in Florence Arizona, filed a *pro se* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Petition). (Doc. 1.) After Respondents filed an answer to the petition (Answer) (Doc. 11) with Exhibits A through BB attached, Attorney Adam Bleier, on behalf of the Arizona Justice Project, filed a notice of appearance for Petitioner. Petitioner, through counsel, filed a supplemental memorandum in support of the Petition (Supplemental Petition) (Doc. 21) with Exhibits 1-30 attached. Respondents filed a response to the Supplemental Petition (Supplemental Response) (Doc. 24) with Exhibits CC through FF attached, and Petitioner filed a Reply (Doc. 33).

On January 31, 2013, the Court granted Petitioner's Motion to Amend the Petition. (Doc. 55.) Petitioner's Amended Petition (Doc. 59) with Exhibit 1-2 attached was filed. Respondent's filed a Supplemental Answer (Doc. 60) with Exhibit GG attached. Petitioner filed a Supplemental Reply. (Doc. 65.)

In accordance with provisions of Title 28, U.S.C. § 636(c)(1), all parties consented to proceed before a United States Magistrate Judge to conduct any and all further proceedings in this case, including trial and entry of a final judgment, with direct review by the Ninth Circuit Court of Appeals if an appeal is filed. (Doc. 56)

For the reasons discussed below, the Magistrate Judge denies the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1).

## I.   BACKGROUND

### A.   Trial Court Proceedings

On December 11, 2002, an indictment was returned by the grand jurors of Pima County in Arizona Superior Court, alleging Petitioner molested his girlfriend's minor daughter, ("L."), on two occasions, once in March and again in October of 2002; the indictment charged Petitioner with two counts of sexual abuse of a minor under 15, one count of molestation of a child, and one count of sexual abuse of a minor under 15 (all dangerous crimes against children under A.R.S. §13-604.01). (Supplemental Petition, Ex. 1 (Indictment).) After a jury trial, Petitioner was found guilty on all counts. (Ex. A.)[1] Petitioner was sentenced on February 23, 2004, to concurrent mitigated sentences of 2.5 years for the sexual abuse counts, a concurrent mitigated sentence of 10 years on the molestation count, and (after a resentencing on March 20, 2006) (Ex. G, Memorandum Decision ("M.D.") 5/05/05 at ¶ 19-20; Ex. H, Minute Entry ("M.E") 3/20/06) a mitigated sentence of 13 years on the count of sexual conduct with a minor. The 13-year sentence was consecutive to the 2.5-year sentence and the 10-year sentence, for a total of 23 years. (Ex. B, Sentencing 2/23/03; Ex. G, M.D. 5/05/05.) There are no sentencing issues presented in the Petition.

L., thirteen year's old at the time of trial, testified as follows: L. lived with her mother, her older brother, her younger sister, her mother's boyfriend, Petitioner, and

---

[1] Unless otherwise noted, exhibits attached to the State's Answer, Supplemental Response and Supplemental Answer are referenced hereinafter as "Ex. ___."

Petitioner's niece. (Ex. BB, RT 9/23/03, at 145- 149.) Early in the morning on a day in March, 2002, before school, Petitioner went to L.'s room and called to her while she was in bed, woke her up, and she went to the living room with him and sat on the couch. (*Id*. at 178-181.) Petitioner touched her breasts and her "private spots" with his hand under her clothes.  (*Id*. at 181-183.) L. testified that when she said "private spots" she was referring to her vagina. (*Id*. at 162.) L. testified that Petitioner stopped because she had to go to school. (*Id*. at 184.) Petitioner told L. "[n]ot to tell her mom". (*Id*. at 183.) L. did tell her mother, but mother took no action when Petitioner denied the conduct. (Ex. DD, RT 9/24/03, at 259.)

Petitioner had a paper route, and L. and her brother, and sometimes Petitioner's niece helped deliver the papers on the weekends. (Ex. BB, RT 9/23/03, at 149-150.) One Sunday in October 2002, Petitioner had L. and her brother help him with the delivery. (*Id*. at 152.) After picking up the papers that morning, Petitioner stopped his vehicle in a parking lot to fold the newspapers. (*Id*. at 153-154.) L.'s brother walked to a nearby convenience store to get something to eat. (*Id*. at 156-158.) After the brother left, Petitioner told L. to get into the truck, where he touched her breasts under her clothes and touched her under her pants on her "private spots." (*Id*. at 160-163.) Petitioner then crawled on top of L., but got off her when her brother returned from the convenience store. (*Id*. at 163-164.) They then went back to folding the papers and then delivering them. (*Id*. at 164-165.) When her brother returned from the convenience store, L. did not talk to him about what had happened. (*Id*. at 164.)  L. did not go home and immediately tell her mother what happened. (Ex. BB, RT 9/23/03, at 170.)

A few days later, when her mom returned from work, L. told her what had happened on Sunday. (*Id*. at 170-172.) After L.'s mother picked Petitioner up from work, and returned home, the three of them talked about what happened on Sunday. (*Id*. at 173.) On Tuesday, L. told some people at school what had allegedly happened. (*Id*. at 184.) After phoning her mother for permission, which her mother gave, L. also went to talk to a

school counselor. (*Id*. at 184-186.) Her mother came to the school around the same time she was talking to the counselor. (*Id*. at 186.) L. was never medically examined.

L. recanted her allegations on three occasions prior to trial. L. told a Child Protective Services worker, that she had lied about what she had said. (Ex. BB, RT 9/23/03, at 187.) L. wrote a letter addressed to the judge in which she stated that "it didn't really happen, 'I just said that because he was mean to us and he always yelled.'" (*Id*. at 188.) During a meeting with the prosecutor, defense attorney and her mother, L. stated that she had lied. (*Id*. at 189.) L. stated she lied "[b]ecause they kept changing the court dates and kept me from my school work like I said it didn't happen." (*Id*. at 189.)

### B.    Appeal

The state appellate court affirmed Petitioner's conviction on direct appeal. (Ex. G, M.D. 5/05/05) The appellate court addressed Petitioner's arguments, rejecting Petitioner's contentions that: (1) the evidence of sexual conduct with a minor was insufficient to support the verdict; and (2) the trial court abused its discretion in denying Petitioner's requested *Willits*[2] instruction. *Id*.

Petitioner filed a petition for review to the Arizona Supreme Court on August 10, 2005 (Ex. I), and on January 5, 2006, that court denied review, (Ex. J).

### C.    First Petition for Post-Conviction Relief

Petitioner's notice of post-conviction relief was filed on March 3, 2005. (Ex. K.) Petitioner filed a petition for post-conviction relief (PCR) on May 7, 2008. (Ex. M.) Petitioner presented the following claims of ineffective assistance of counsel ("IAC") in his petition: (1) failure to communicate to and properly evaluate the State's plea offer with Mr. Leon; (2) failure to present an expert witness to undermine the testimony of the State's "cold" expert witness, Wendy Dutton, and failure to properly cross-examine her; (3) failure to call factual witnesses that were listed on the Petitioner's witness list prior to trial; (4) failure to call character witnesses; (5) failure to object to the manner in which

---

[2] *State v. Willits*, 96 Ariz. 548 (1964).

the prosecutor led the alleged victim through her direct testimony; and (6) failure to introduce a letter which showed that the alleged victim had sexual knowledge where her trial testimony suggested that she did not. (*Id.*) Petitioner also raised two claims of new evidence: (1) the discovery of a friend and neighbor who made similar allegations against her own father immediately prior to L.P. making allegations against the Petitioner; and (2) there existed evidence that the State's expert had fabricated her credentials regarding her education. (*Id.*)

The trial court reviewed the petition and granted a hearing on the allegation that trial counsel was ineffective in not explaining the proposed plea agreement. (Answer, Ex. O, Ruling, 8/05/05.) The trial court also allowed further argument on whether a hearing should be held on Petitioner's claim of newly discovered evidence regarding the allegations by the victim's friend, but ultimately limited the scope of the evidentiary hearing to the issue of whether trial counsel was ineffective in not explaining the plea agreement to Petitioner. (Ex. O, M.E. 8/05/05; Ex. P, Ruling 8/15/08.) Following an evidentiary hearing (Ex. R, R.T. 10/29/08), the court addressed the merits of each claim, and denied the PCR. (Ex. S, Ruling, 12/11/08.) Regarding the newly discovered evidence claims, the trial court found that the claim regarding Wendy Dutton was impeachment material, but that Dutton's testimony was not of sufficient critical significance at trial that the impeaching evidence probably would have changed the verdict or sentence. (Ex. S, Ruling, 12/11/08 at 2-3); *see* Rule 32.1(e)(3)(Newly discovered material facts exist if "[t]he newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.") As to the newly discovered evidence about the victim's friend, the trial court found that the evidence existed well before the time of trial, there was no affidavit of newly discovered evidence from defendant or his counsel, and also that the attenuation in time and lack of evidence of factual similarity made it

inappropriate to grant a new trial. (Ex. S, Ruling, 12/11/08 at 4-5).

Petitioner moved for a rehearing, asserting that the trial court made two errors of fact in its ruling on Petitioner's claim of newly discovered evidence regarding the allegations by the victim's friend. (Ex. T.) The trial court addressed the factual issues, found that the evidence was newly discovered, and that the defense had exercised due diligence in discovering the evidence, but affirmed its previous ruling, finding that the newly discovered evidence was for the purposes of impeachment, that it did not substantially undermine the victim's testimony, nor was it probable that it would have changed the verdict in the case. (Ex. U, Ruling, 1/28/09.)

Petitioner filed a petition for review of the trial court's ruling alleging the court erred in denying relief on all eight of the claims raised in the PCR. (Ex. V.) The appellate court expressed satisfaction with the trial court's identification, analysis, and resolution of the PCR, and, without further elaboration, found no abuse of discretion by the trial court and denied relief on the petition. (Ex. W, M.D., 7/31/09)(citing *State v. Whipple*, 177 Ariz. 272 (App. 1993).

Petitioner's petition for review to the Arizona Supreme Court was denied without comment on March 3, 2010 (Ex. Y), making the trial court's ruling, as adopted by the appellate court's decision, the last reasoned decision on these claims.

D.    Federal Habeas Petition

On February 18, 2011, Petitioner deposited his habeas petition for mailing in the prison mailing system. (Doc. 1, Petition.) Petitioner filed a supplemental memorandum on November 18, 2011. (Doc. 21, Supplemental Petition.) On January 30, 2013, the Court granted Petitioner's Motion to Amend his habeas petition and ordered Petitioner to file his verified amended petition. (Doc. 55.) Petitioner filed the Amended Petition on February 18, 2013. (Doc. 59, Amended Petition.)

Eight grounds for relief were raised by the Petitioner in his *pro se* Petition: Grounds One through Six alleged claims of ineffective assistance of trial counsel; Ground

Seven alleged newly discovered evidence that the victim's friend made the same allegations against her father prior to the victim's allegations against Petitioner; and Ground Eight alleged newly discovered evidence that the State's expert witness falsified her academic credentials. (Petition, at 6-13.)

The Amended Petition modified Petitioner's newly discovered evidence claims in the following manner: Ground Seven of the Amended Petition alleges that Petitioner's Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to investigate and discover that a neighbor the same age as the victim had made similar allegations. In addition, post-conviction counsel was ineffective in failing to properly "federalize" this claim and raise it as an IAC claim under the Sixth Amendment. (Amended Petition, at 8-9.) Ground Eight of the Amended Petition alleges that Petitioner's Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to investigate and discover the important impeachment evidence of the State's expert witness. In addition, the Petitioner's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963) and the Fifth and Fourteenth Amendment were violated by the State's failure to disclose such evidence. Post-conviction counsel was ineffective in failing to properly "federalize" this claim and raise it as an IAC claim under the Sixth Amendment. (Amended Petition, at 9-10.)

II.     DISCUSSION

A.     Standard of Review

Because Petitioner filed his petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA").

B.     Statute of Limitations

Under the AEDPA, a state prisoner must generally file a petition for writ of habeas corpus within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" 28

U.S.C. § 2244(d)(1)(A). The running of this one-year statute of limitations on habeas petitions for state convictions is tolled during any period when "a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in any state court. *See* 28 U.S.C. § 2244(d)(2). Thus, the statute of limitations is tolled during the pendency of a state court action for post-conviction relief. 28 U.S.C. § 2244(d)(2).

C.   Exhaustion of State Remedies

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277–78 (1971). If a habeas claim includes new factual allegations not presented to the state court, it may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz.R.Crim.P. 32.2(a)(3). The preclusive effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner. *See* Ariz.R.Crim.P. 32.1(d)-(h), 32.2(b), 32.4(a).

A habeas petitioner's claims may be precluded from federal review in two ways.

First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n. 1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n. 1; *see also Gray v. Netherland,* 518 U.S. 152, 161-62 (1996).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

Cause is defined as a "legitimate excuse for the default," and prejudice is defined as "actual harm resulting from the alleged constitutional violation." *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). Ordinarily, "cause" to excuse a default exists if the petitioner "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice need not be addressed if a petitioner fails to show cause. *Thomas*, 945 F.2d at 1123 n.10. To bring himself within the narrow class of cases that implicate a fundamental miscarriage of justice, a petitioner "must come forward with sufficient proof of his actual innocence" *Sistrunk v. Armenakis*, 292 F.3d 669, 672-73 (9th Cir. 2002)

(internal quotation marks and citations omitted), which can be shown when "a petitioner 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 673 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

D.   Standard of Review: Merits

Petitioner's habeas claims are governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reduc[ing] delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' ... demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (quoting *Lindh*, 521 U.S. at 333 n. 7).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication was either (1) "contrary to" clearly established federal law as determined by the Supreme Court, (2) "involved an unreasonable application of such law," or (3) "was based on an unreasonable determination of the facts in light of the record before the state court." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011) (quoting 28 U.S.C. § 2254) (internal quotation marks omitted).

Because the relevant state court decision is the last reasoned state decision regarding a claim, the Court reviews the trial court's ruling on Petitioner's PCR for all claims raised in the Amended Petition. *See Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005). "State-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'"

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams v. Taylor*, 529 U.S. 362, 381 (2000). Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.2003), overruled on other grounds by *Andrade*, 538 U.S. 63.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams,* 529 U.S. at 405–06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (*per curiam*). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams,* 529 U.S. at 406; *see Lambert v. Blodgett,* 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a

new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan,* 550 U.S. at 473; *Visciotti,* 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts. *Miller–El v. Dretke,* 545 U.S. 231, 240 (2005) (*Miller–El II* ). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell,* 537 U.S. 322, 340 (2003) (*Miller–El I* ); *see Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan,* 550 U.S. at 473–74; *Miller–El II,* 545 U.S. at 240.

**III.   ANALYSIS**

A.   <u>Timeliness</u>

Respondents submit that the claims in the original Petition, placed in the prison mailing system on February 23, 2011, are timely. (Answer, at 5.) The Court agrees.

At the earliest[3], Petitioner's conviction and sentence became final on April 5, 2006, ninety (90) days after the Arizona Supreme Court denied Leon's petition for review from his direct appeal. *See* 28 U.S.C. § 2244(d)(1)(A). ("[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the [90–day] period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or

---

[3] It is not clear when the mandate issued in this case, however, it is not necessary to ascertain this date because relying on the date the Arizona Supreme Court issued its ruling, the Petition is timely.

not the petitioner actually files such a petition."); *see also Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). The limitations period was tolled prior to this date by Petitioner's filing of a notice of post-conviction relief. *See* U.S.C. §2244(d)(2)("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.") The limitations period was tolled until Leon's Rule 32 proceedings concluded on March 3, 2010, when the Arizona Supreme Court denied his petition for review. Petitioner was required to file his petition for writ of habeas corpus within 1 year of this date. Thus, the Petition, deposited in the prison mailing system on February 18, 2011, is timely.

Petitioner's Amended Petition was filed after the limitations period expired. Thus, in order to be considered timely, any new claims in the Amended Petition that were not included in the original petition must relate back to the claims in the original petition. *Mayle v. Felix*, 545 U.S. 644, 659 (2005). Respondents object to the Court's previous determination that Petitioner's new claims, Grounds Seven and Eight of the Amended Petition, relate back to the timely filed Petition and are thus timely.  The Court construes this argument as a motion to reconsider its previous ruling on the timeliness of the claims raised in the Amended Petition.

Generally, motions to reconsider are appropriate only if the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration should not be used to ask a court "to rethink what the court had already thought through, rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *ACandS, Inc.,* 5 F.3d at 1263.

The facts and circumstances surrounding Plaintiffs' claims have not changed since this Court's Order concerning these matters; there are no new facts which were discovered since the Court's disposition of the motion to amend.  There is no manifest error of law.

Accordingly, the Court rejects Respondents' argument, construed as a motion for reconsideration, that Petitioner's new claims of IAC and a violation of due process do not arise out of the same core facts as any of his claims in his original petition and therefore do not relate back. The Court will, however, at Respondents' urging, readdress its finding concerning the procedural default status of these claims, as discussed in § III.B.1, infra.

B.     Procedural Default

1.     *Grounds Seven and Eight*

Prior to the filing of an Amended Petition, Respondents argued that Grounds Seven and Eight, as presented in the original Petition, were not properly presented to the state court as federal claims and were therefore procedurally defaulted because the Petitioner cannot  return to state court to do so. (Answer at 11-12.)  The State also argued that the claims, as presented in the original Petition, failed to state a cognizable federal claim. (Answer at 6-7.) Both Grounds Seven and Eight of the original Petition allege that newly discovered evidence exists which, if available at the time of the trial, would have affected the verdicts. (Petition at 12-13, 15.) In the state courts, Petitioner claimed that he had newly discovered evidence that the victim's friend had made similar allegations of sexual abuse against her father before the victim made allegations against Petitioner and that the State's expert witness had lied about her academic credentials. (Ex. M at 24– 27, and Ex. V at 27–32.) He did not state a federal basis for his substantive claim.[4] The state court analyzed Petitioner's claim that newly discovered evidence in the form of a

---

[4] Petitioner did assert that his right to an evidentiary hearing on the newly discovered evidence was protected "by the Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution." (Ex. M at 24) Petitioner does not argue in the Petition that he was denied a right to a hearing in violation of federal law.

newspaper article about Wendy Dutton's credentials entitled him to relief under the standard for review set out in Rule 32 for newly discovered evidence. (Ex. S at 2.) Similarly, the state court analyzed Petitioner's claim that newly discovered evidence existed regarding the victim's friend's allegations under Rule 32 and relevant state court authority. (Ex. S at 4-5.) This Court can grant habeas relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Leon has not stated a federal claim with respect to either of these claims, thus they are non-cognizable on federal habeas review.

To the extent Leon's argument in his habeas petition can be understood as an argument that the state court erred in not granting him an evidentiary hearing based on the alleged new evidence, his claim is not cognizable on habeas review. "Federal habeas relief is not available to redress errors in state post-conviction proceedings." *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (*per curiam*); *Ortiz,* 149 F.3d at 939 ("[F]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings").

To the extent Leon's claim can be understood as a freestanding claim that the newly discovered evidence shows that he is actually innocent, his claim is also not cognizable on habeas review. The Supreme Court has never recognized factual innocence as a free-standing constitutional claim, but rather indicated it is not a free-standing constitutional claim. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995) (claim that petitioner is factually innocent not reviewable on habeas). Petitioner's claims as presented in Grounds Seven and Eight of the original Petition are non-cognizable.

In this Court's ruling on Petitioner's Motion to Amend, the Court rejected

Respondents' arguments that Grounds Seven and Eight of the Amended Petition were procedurally defaulted because the "cause" for the procedural default –that post-conviction counsel's failure to raise these claims before the state court was itself ineffective assistance of counsel – was not raised as a claim before the Arizona courts. Again, the Court considers Respondents' arguments in the Supplemental Answer as a motion to reconsider this Court's previous ruling. The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *ACandS Inc.,* 5 F.3d at 1263.

The basis for Respondents' argument is that the Court erred by relying on the Ninth Circuit's holding in *Dickens v. Ryan*, 668 F.3d 1054, 1072 (2012) when the case was pending rehearing *en banc*, 704 F.3d 816 (9th Cir. 2013).

Petitioner's urge as cause for default of the Grounds Seven and Eight of the Amended Petition the ineffectiveness of counsel in Petitioner's first PCR proceeding. Federal courts had long held that only constitutionally ineffective assistance of counsel could establish cause to excuse a procedural default or procedural bar. In *Martinez v. Ryan*, --- U.S. ---, 132 S. Ct. 1309 (2012), the Supreme Court recognized a "narrow exception" to that rule:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S.Ct. at 1320.

Respondents argue that *Martinez* does not excuse Petitioner's failure to exhaust, because Petitioner has not in the first instance raised his IAC of PCR counsel claim to the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451–54 (2000) (requiring that

claim of appellate IAC be properly exhausted in state court before serving as cause to excuse default of other claims). Respondents assert that *Martinez* did not abrogate the Supreme Court's holdings in *Carpenter*, nor did it hold that an ineffective-assistance–of–PCR-counsel claim need not be exhausted before it can constitute cause. The Ninth Circuit expressly rejected this argument in an unpublished opinion, *Dickens v. Ryan*, 688 F.3d 1054, 1072–73 (9th Cir. 2012) vacated by 704 F.3d 816 (9th Cir. 2013)(granting rehearing *en banc*). As Respondents assert, this Court's reliance on *Dickens*, after the Ninth Circuit granted a rehearing en banc, was in error, as the order granting the rehearing states: "The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit." *Dickens*, 704 F.3d 816.

The Ninth Circuit has since issued its *en banc* ruling in *Dickens*, explaining that: *Pinholster,* 131 S. Ct. 1388 (2011), does not bar the federal district court from considering the procedurally barred ineffective assistance claim because it was not previously adjudicated on the merits by the state courts; and 28 U.S.C. § 2254(e)(2) does not bar an evidentiary hearing on remand for a petitioner to show cause and prejudice under *Martinez* to overcome the procedural bar. *Dickens v. Ryan*, --- F.3d ---, 2014 WL 241871, *12-14 (9th Cir. 2014). The Ninth Circuit concluded:

> [A] petitioner, claiming that PCR counsel's ineffective assistance constituted "cause," may present evidence to demonstrate this point. The petitioner is also entitled to present evidence to demonstrate that there is "prejudice," that is that petitioner's claim is "substantial" under *Martinez*. Therefore, a district court may take evidence to the extent necessary to determine whether the petitioner's claim of ineffective assistance of trial counsel is substantial under *Martinez*.

*Dickens*, 2014 WL 241871, *14.

Thus, this Court considers, in the first instance, Petitioner's IAC of PCR counsel claim as cause, under *Martinez*, to excuse Petitioner's procedural default of Grounds Seven and Eight. The Supreme Court has provided guidance in the application of

*Martinez*, describing a four prong test that Petitioner must meet to overcome a procedural default of an IAC of trial counsel claim, under *Martinez*:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding." *Martinez*, 132 S.Ct. at 1318-19, 1320-21.

*Trevino v. Thaler*, ⎯⎯ U.S. ⎯⎯, 133 S.Ct. 1911, 1918 (2013). Accordingly, this Court will analyze Petitioner's amended claims under the four requirements established in *Martinez*, as instructed by *Trevino*.

### 2.   *Martinez analysis of Grounds Seven and Eight of the Amended Petition*

Petitioner argues that the procedural default of his claims that trial counsel was ineffective is excused because Rule 32 counsel was ineffective in failing to plead the claims as federal constitutional claims as opposed to only state law claims that were not cognizable in federal court. (Doc. 34, Motion to Amend, at 4.) The third and fourth prongs of the *Martinez* test are not at issue here. The first requirement the Court addresses is that Petitioner must show a "substantial" underlying trial-counsel IAC claim. A "substantial" claim is a claim that "has some merit." *Martinez*, 132 S.Ct. at 1318. Like the standard for issuing a certificate of appealability, "substantially" requires the petitioner to demonstrate that "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Detrich v. Ryan*, --- F.3d ---,

2013 WL 4712729 *6 (internal quotations omitted); *cf. Hoak v. Idaho*, 2013 WL 5410108 (D. Idaho 2013).

Whether Petitioner's claim is analyzed on the merits, or under the first prong of *Martinez*, the result is the same: Petitioner's claims have no substantial merit. Petitioner's Ground Seven is that his Sixth Amendment right to the effective assistance of counsel was violated by his trial counsel's failure to investigate and discover that a girl in the neighborhood had made similar allegations of sexual abuse against her father before the victim made allegations against Petitioner. (Amended Petition, at 8.) To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy two separate requirements: he must (1) show that counsel's performance fell below objective standards of reasonableness and "outside the wide range of professionally competent assistance," and (2) establish that counsel's performance prejudiced Petitioner by creating "a reasonable probability that absent the errors the fact finder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). Respondent argues that Petitioner's claim of IAC of trial counsel fails under both prongs of *Strickland* – deficient performance and prejudice. *See id*.  Respondents assert that Petitioner cannot show that his counsel fell below an objective standard of reasonableness in failing to discover this information before Petitioner's trial; neither can Petitioner show that there is a reasonable probability that this evidence, had it been presented, would have changed the outcome of Petitioner's trial.

Although an IAC claim was not presented to the trial court, the court nonetheless addressed the issue of whether or not it was probable that the newly discovered evidence would have changed the verdict in the case when it analyzed the new evidence claim presented by Petitioner's PCR.

Counsel must make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 691.  *Strickland*, however, does not impose a constitutional requirement that every conceivable witness be

interviewed. *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995)(citing *United States v. Tucker*, 716 F.2d 576, 594 (9th Cir. 1983). In determining whether counsel's conduct falls within the broad range of professionally acceptable conduct, the Court will not view counsel's actions through "the distorting lens of hindsight." *Id*. at 1036 (citing *Deutscher v. Whitley*, 884 F.2d 1152, 1159 (9th Cir.1989), *vacated on other grounds*, *Angelone v. Deutscher*, 500 U.S. 901 (1991)).

Petitioner attached to his Rule 32 petition an affidavit from his nephew stating that the victim and "the girl across the street, K[.]" were friends. K. accused her father of molesting her in February, 2002. The victim here testified that she was first abused by Petitioner in March 2002. Petitioner's claim is that his counsel was ineffective in failing to discover this evidence that the victim's friend had made similar allegations because he could have argued that it was "further evidence" that the victim had fabricated her story. (Amended Petition, at 8–9.)

In *Cannedy v. Adams*, 706 F.3d 1148 (2013), *as amended on denial of rehearing*, 733 F.3d 794 (9th Cir. 2013), the Ninth Circuit considered a trial counsel's failure to investigate a friend of the victim after the petitioner had informed his counsel that the friend could give favorable testimony on his behalf as to a motive for the victim to falsely accuse the petitioner. *Id*. at 1161. Like this case, the trial in *Cannedy* was largely a "he said, she said" case, with no physical evidence linking the petitioner to the alleged abuse. The Ninth Circuit found that there was no reasonable argument that counsel's failure to contact the friend did not amount to incompetence under the prevailing norms, as evidence that the victim had a motive to implicate Petitioner falsely would have been vital to the petitioner's defense and consistent with the defense strategy. The Ninth Circuit further found that "[n]o competent lawyer would have declined to interview such a potentially favorable witness when that witness had been clearly identified, the witness was easily accessible and willing to provide information, and trial counsel faced a dearth of defense witnesses. *Id*. at 1161.

Though the facts of the trial in this case are similar, unlike the petitioner in *Cannedy*, there is no evidence that the friend of the victim in this case was "clearly identified, … easily accessible and willing to provide information." *See id*. Petitioner in this case sets forth no facts showing that the neighbor's allegations against her father were known to Petitioner's counsel at any time before trial, or facts that would suggest that a reasonably competent attorney would have discovered the evidence. In fact, Petitioner asserted during his PCR proceedings that all of Petitioner's family members, as well as Petitioner, "had no idea that [L.'s] friend made the same allegations until after the trial." *See* (Ex. N. at 11 and Attachment: Petitioner's affidavit). Because the facts surrounding the neighbor's allegation were unknown to Petitioner's trial counsel, and because Petitioner presents no facts upon which the court could conclude that the evidence and witnesses related to the neighbor's allegation could have been readily found by counsel prior to Petitioner's trial, Petitioner fails to demonstrate that counsel's performance fell below an objective standard of reasonableness.

Additionally, Petitioner fails to establish a reasonable probability that, but for such failure to discover and investigate the issues surrounding the neighbor's allegation, the trial result would differ. Even assuming there was evidence that K. had told the victim what had happened to her and such evidence was presented at trial, the trial court found it would not have substantially undermined the victim's testimony or change the verdict, particularly since the jury heard evidence that the victim wanted Petitioner out of the family. *See* (Ex. U, Ruling 1/28/09, at 2-3.) In fact, the jury heard evidence that the victim did not want the Petitioner in the family, and would prefer that her family consist only of her, her mother, brother, and newborn sister, and not Petitioner. *See* (Ex. BB, RT at 211) Additionally, they heard evidence that she had recanted her testimony, and in a letter gave as a reason that she had accused Petitioner because he was mean, and yelled a lot, and had also told a C.P.S. worker that she had accused Petitioner because he was mean and nasty and she wanted him out of the house. (Ex. BB, RT at 212-213.) The

newly discovered evidence, at most, would have allowed counsel to argue a possible source where the victim got the idea for the allegations.

It follows that, because the underlying IAC claim of trial counsel lacks merit, Petitioner's claim that his Rule 32 counsel was ineffective in failing to present this claim is also meritless. *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("PCR counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective").

Petitioner's Ground Eight is that his trial counsel was ineffective by failing to investigate and discover the impeachment evidence of the State's expert witness, Wendy Dutton. Petitioner also asserts that his due process rights under *Brady* and the Fifth and Fourteenth Amendment were violated by the State's failure to disclose such evidence.

Initially, the Court notes that, by failing to raise the claim in the State court, Petitioner has procedurally defaulted his claim of a due process violation, and this subsection of Ground Eight cannot be excused by the holding in *Martinez*, as it does not allege the ineffective assistance of trial counsel. *See Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013) (*Martinez* does not apply to underlying defaulted *Brady* claim). Accordingly, this subsection of Ground Eight is dismissed as procedurally defaulted.

Petitioner argues that trial counsel was ineffective in failing to discover that Dutton had falsified her academic and professional credentials. In the present case, Dutton testified that she was "currently a doctoral student at Arizona State University" (Ex. DD at 402.) Petitioner argues that that statement is completely misleading. (Amended Petition at 10.) Petitioner asserts that evidence that Dutton had been falsifying her credentials was discovered in May 2006, when it was reported in the Arizona Daily Star that defense attorney Dan Cooper filed a motion to preclude Dutton from testifying in a case on the ground that she had falsified her academic and professional credentials under oath in several jury trials. (Supplemental Petition, Ex. 4.)

Dutton is currently enrolled in the ASU doctoral program only because she pays an annual enrollment fee. (Supplemental Petition, Ex. 5, at 13.) She has made no forward progress in obtaining her Ph.D. since her committee disbanded in 1998. (*Id*. at 8-15.) According to the requirements of the program, Dutton was required to sit for and pass her comprehensive exams immediately after finishing her coursework. (Supplemental Petition, Ex. 15.) Then, she was required to complete and defend her dissertation within five years of passing the comprehensive exams. (*Id.*) She cannot receive a letter of candidacy until she passes the comprehensive examinations and successfully defends the dissertation prospectus. (*Id.*)

As with Petitioner's Ground Seven, the starting point for analyzing a failure to investigate IAC claim is *Strickland*, which instructs that counsel must make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 691. To determine whether the investigation was reasonable, the court "must conduct an objective review of [counsel's] performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citation and quotation marks omitted); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005). Petitioner cannot show that his counsel fell below an objective standard of reasonableness in failing to discover this information before trial. Petitioner claims that Dutton's testimony regarding her credentials were, at a minimum, misleading, however, Petitioner makes no argument in support of the claim that his trial counsel's failure to investigate or discover Dutton's true academic background was unreasonable. *See* (Supplemental Response at 26-28; Amended Petition at 9-10). The basis for Petitioner's claim is the appearance, three years after trial, of a newspaper article raising questions about Dutton's academic credentials. Petitioner's counsel had no apparent reason at the time of trial to inquire into Dutton's academic credentials beyond the allegations in her *curriculum vitae*, which was in

counsel's trial file, together with a transcript of Dutton's testimony in *Arizona v. Don Wayne Meadows*, Pima County Court cause no. CR2002-2627, and a printout of *Arizona v. Curry*, 187 Ariz. 623 (1996).

Petitioner makes no claim that the material in his trial counsel's possession, Dutton's *curriculum vitae*, and the transcripts and opinion of other state cases in which she had testified, would have put counsel on notice that her *curriculum vitae* was embellished, or that her testimony regarding her credentials would be misleading or impeachable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998)(observing that counsel not deficient for failing to find evidence if, after a reasonable investigation, nothing has put counsel on notice of the existence of that evidence.) Neither does Petitioner argue that the research trial counsel *had* conducted into Dutton's background was unreasonable, only that he failed to investigate her academic background. Petitioner has not alleged any facts showing that trial counsel had reason to believe that Dutton's credentials or academic background was misleading in any way.

Because an ineffective assistance claim must satisfy both prongs of *Strickland*, failure to meet either prong is fatal to a claim and there is no requirement that the Court "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Because the Court determines that it is not unreasonable to dispose of this claim on the deficient performance prong, there is no need to address the prejudice prong.

The Court finds that reasonable jurists would not encourage Petitioner to pursue either Ground Seven or Eight in the Amended Petition. Petitioner has presented no facts which would have put a reasonable trial attorney on notice that further investigation was necessary of either claim. Accordingly, these claims are not substantial and do not qualify for the *Martinez* exception. The Court dismisses these claims as procedurally defaulted. Alternatively, for the reasons stated above, the Court finds that, on the merits, Petitioner

has failed to demonstrate, on either ground, a meritorious trial-counsel IAC claim under *Strickland*, 466 U.S. 668.

   C. <u>Merits</u>

  Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); *Williams*, 529 U.S. at 412; or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

  With respect to Grounds One through Six, alleging ineffective assistance of counsel, the clearly established federal law is set forth in *Strickland*, 466 U.S. 668. Under *Strickland*, a petitioner must show that counsel's performance was deficient, falling outside the wide range of professionally competent assistance, and prejudicial, so that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 690, 694. The pivotal question in this federal review, is not whether defense counsel's performance fell below *Strickland's* standard, but "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 131 S.Ct. at 785 (2011). The court must judge the reasonableness of counsel's conduct "on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. The court may "neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight...." *Matylinsky v. Budge*, 577 F.3d 1083, 1091 (9th Cir. 2009) (citation and quotations omitted); *see Yarborough v. Gentry*, 540 U.S. 1, 8, (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). Petitioner bears the burden to show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Richter*, 131 S.Ct. at 787 (citation and internal quotations omitted);

- 25 -

*see Strickland*, 466 U.S. at 689 (petitioner bears burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (citation and quotations omitted). The combination of *Strickland* and AEDPA renders habeas review of ineffectiveness claims "doubly deferential ." *See Pinholster*, 131 S.Ct. at 1403. Therefore, to establish entitlement to relief, Petitioner must make the additional showing that the PCR court, in ruling that trial counsel was not ineffective, applied *Strickland* in an objectively unreasonable manner. In making this determination, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland' s* deferential standard." *Richter*, 131 S.Ct. at 788.   Because the *Strickland* standard is a general one, "the range of reasonable applications is substantial." *Id*.

"In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Id*. at 791–92 (citations omitted). Rather, the issue is whether, in the absence of counsel's alleged error, it is " 'reasonably likely' " that the result would have been different. *Id*. at 792 (quoting *Strickland*, 466 U.S. at 696). "The likelihood of a different result must be substantial, not just conceivable." *Id*.

As Respondents correctly argue, Petitioner is not entitled to an evidentiary hearing in this Court. The Supreme Court's decision in *Pinholster*, 131 S. Ct. at 1398, makes clear that review of § 2254(d) claims "is limited to the record that was before the state court that adjudicated the claim on the merits." Petitioner's Grounds One through Six, even those summarily denied by the state courts, were adjudicated on the merits. *Id*. at 1402. With respect to Claims Seven and Eight, as demonstrated above, even assuming Petitioner's allegations are true, he is not entitled to relief under *Strickland* and is not entitled to further evidentiary development. *See Landrigan*, 550 U.S. at 481 (district court properly exercised discretion to deny evidentiary hearing where, even assuming the truth

of all facts sought to be proven at an evidentiary hearing, claim failed on merits); *West v. Ryan*, 608 F.3d 477, 485–90 (9th Cir. 2010) (where defendant failed to allege facts that, if found to be true, would establish a colorable claim under *Strickland*, there was "nothing to be determined in an evidentiary hearing" and the district court did not abuse its discretion by denying one).

### 1.    Ground One[5]

At trial, Wendy Dutton testified as an expert witness for the State of Arizona. (Ex. DD, RT 9/24/03, at 400-424.) Petitioner argues that his trial counsel was ineffective for (1) failing to adequately investigate Dutton's background; (2) failing to challenge Dutton's assertions regarding Child Sexual Abuse Accommodation Syndrome ("CSAAS") and her assertion that children who disclose abuse commonly recant their allegations; (3) failing to elicit testimony from Dutton to highlight the deficiencies in the prosecutor's examination of the victim during the trial through the use of leading questions; and (4) failing to call an expert witness. The trial court resolved these claims, finding the claim that counsel had not adequately researched or investigated Dutton to be without merit, and that the other claims involved matters of trial strategy. (Ex. S) Petitioner presented these claims in his petition for review to the Arizona Court of Appeals, which denied relief without comment. (Ex. V at 12; Ex. W.)

Petitioner's *Strickland* claim was clearly presented to the state courts. *See* (Ex. M , at 12.) Though the trial court did not explicitly state that it was relying on *Strickland*, the court made a finding that trial counsel's performance was not deficient, and that there was a strong presumption that defense counsel's decisions were made for strategic or tactical purposes. *See* (Ex. S, at 1-2).

At trial, Dutton testified that she was a certified professional counselor and a forensic interviewer at the Child Abuse Assessment Center at St. Joseph's Hospital in Phoenix for a little more than ten years. (Ex. DD, RT 9/24/03 at 401.) Dutton's

---

[5] Ground One was listed in the original Petition as Ground Two.

experience included dealing with children as part of an outpatient counseling study and inpatient treatment programs and in both clinical and forensic settings. *Id*. at 402. Dutton testified as a "cold expert," that is, having not reviewed any police reports or statements in the case, and not having talked to the victim or other witnesses. *Id*. at 404.[6] Dutton explained that, generally, children disclose abuse in "a piecemeal fashion," evaluating how their message is received first before disclosing more detail and possibly additional incidents of abuse. (*Id*. at 408.) According to Dutton, if the initial disclosure is met with disbelief, or blame of the victim, then the child may not disclose any more to anyone else. (*Id*.) Dutton explained that "script memory" occurs when many incidents of abuse have been chronic over a period of time, and results in a blending of memories and children's difficulty remembering specific incidents of abuse. (*Id*. at 409.) When a forensic interview is conducted between the victim and a stranger, some children's disclosure may be inhibited because they are anxious and uncomfortable, either because they are speaking with somebody who is new to them, or are fearful of police or are uncomfortable talking to a male about what happened. (*Id*. at 410.) It would not be unusual for a child to wait a couple of days before disclosing an event, and that the closer

---

[6] Although Dutton did not testify about CSAAS by name, her testimony was consistent with the theory of CSAAS, which in general, "describes various emotional stages, experienced by sexually abused children, that may explain their sometimes piecemeal and contradictory manner of disclosing abuse." *Brodit v. Cambra*, 350 F.3d 985, 991 (9th Cir. 2003). As one state court describes it, CSSAS evidence "does not detect sexual abuse. . . it assumes the presence of sexual abuse, and explains a child's often counter-intuitive reactions to it." *New Jersey v. W.B.*, 205 N.J. 588, 610 (2011)(internal citation omitted). The Ninth Circuit has noted that expert testimony about CSAAS has been admitted "in federal child-sexual-abuse trials, when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth." *Brodit*, 350 F.3d at 991 (citing *United States v. Bighead*, 128 F.3d 1329 (9th Cir.1997), and *United States v. Antone*, 981 F.2d 1059 (9th Cir.1992)). The Ninth Circuit has found that this type of general testimony "merely assist[s] the trier of fact in understanding the evidence; it [does] not improperly bolster the particular testimony of the child victim." *Antone*, 981 F.2d at 1062.

the relationship between the victim and the abuser, the "longer the delay in disclosing is likely to be." (*Id*. at 410-411.) Moreover, "half of all children will exhibit some kind of behavioral or emotional symptoms" but, on the other hand, "half the children may show no signs or symptoms that would lead them to the attention of the mental health system." (*Id*. at 411.) Dutton testified that children "can and do" exhibit various symptoms, including "getting in trouble, aggression, having difficulty paying attention in school, dropping in grades, nightmares, bed wetting, temper tantrums, self[-]destructive behavior, suicidal thoughts, drug and alcohol abuse… a lot of symptoms that can indicate that a child has experienced some kind of trauma" but not necessarily just sexual abuse. (*Id*. at 411-12.) Dutton testified that it was also not unusual for the people that are closest to the victim to not be aware that abuse may be happening. (*Id*. at 412.) Dutton also agreed that it is not uncommon for children to lose memories about things that have happened to them when they are abused because children use disassociation as a coping mechanism while the abuse is happening, and because, in cases where children delay disclosure, the passage of time makes it more difficult to remember certain details of the abuse. (*Id*. at 413.)

Dutton also opined that it is "not uncommon for children to recant true allegations of abuse" and that certain factors increase the chance of recantation, including parents who don't believe or support or protect them, or side with the perpetrator rather than taking the side of the victim, pressure from their family or perpetrator to recant, and negative personal consequences, such as being placed in foster care. (*Id*. at 416-17.) Once these impediments are removed, "many children later reaffirm the original allegation." (*Id*. at 418.)

On cross-examination, Dutton admitted that the presence or absence of any of the factors she had described on direct examination would not necessarily be telling as to whether or not any sexual abuse had occurred in a particular case. (*Id*. at 421.) Defense counsel also established that the counties in Arizona had developed a protocol for how

investigations should be conducted, which included taking sexual abuse victims to be examined by a medical doctor. (*Id*. at 422.)

Through examination of trial counsel's file and testimony at a PCR evidentiary hearing, the trial court found that trial counsel's investigation into Dutton's background lacked merit. Petitioner asserts that it is evident from Dutton's cross-examination by trial counsel that he had not researched CSAAS or had any understanding of what Dutton's potential testimony might be. Contrary to this assertion, however, the trial court noted that counsel had "extensive materials in his file related to this expert" including Dutton's *curriculum vitae*, a copy of a reported case discussing CSAAS and another lawyer's attempt to disqualify Dutton as a witness, and a transcript from Dutton's testimony in another state case. Additionally, the trial court noted that trial counsel had conducted a pretrial interview of Dutton[7], and filed a Motion in Limine to preclude her testimony. At the evidentiary hearing on Petitioner's PCR, counsel testified that he had also discussed the issues involving Dutton with other attorneys who had cross-examined her in another case.

Review of the trial transcript demonstrates that counsel did effectively cross-examine Dutton, though not specifically referring to either CSAAS or recantation:

> Q:    The factors that you have been telling us about that are generally present in these types of cases, child abuse cases, sexual molest cases, those are the ones that - - all the factors are now present on all the cases; right?
>
> A:    No, not necessarily.
>
> Q:    And there are some cases, child abuse cases, sexual abuse cases in which some of the factors are present and some not; right?

---

[7] It is not clear that this finding is supported by the record in this case. The Court finds that, even if counsel had not conducted a pretrial interview of Dutton, it does not change the Court's determination in this review.

1

2

3

4

| | | |
|---|---|---|
| A: | That's correct. |

Q:   And does the presence of any of those factors or absence of any of those factors tell us whether or not any sexual abuse occurred in a particular case?

A:   No, not necessarily.

(Ex. DD, RT 9/24/03 at 420-21.) To the extent that Petitioner asserts that the purpose of Dutton's testimony was to convey to the jury "that no matter what the behavior of the child in any particular case, that behavior is consistent with the child having been abused" (Supplemental Petition at 12) counsel addressed this issue in his cross-examination with follow-up questions that "went to the heart of her ability to vouch for the accuser." (*Id*. at 13).    The trial court found that having presided over Petitioner's trial, counsel's performance on cross-examination of Dutton was not ineffective, and that there was a strong presumption that all of the claims raised by Petitioner involved trial strategy, and indulged a "strong presumption that defense counsel's decisions were made for strategic or tactical purposes." (Ex. S at 2)(citing *Arizona v. Salazar*, 146 Ariz. 540, 541 (1985)). Though perhaps Dutton could have been cross-examined more comprehensively, the Court finds that there is a "reasonable argument that counsel satisfied *Strickland's* deferential standard." *See Richter*, 131 S.Ct. at 788 (emphasis added). The trial court's finding that the claim that Petitioner's counsel did not adequately investigate or research Dutton, or cross-examine her effectively, was without merit is supported by the record before this Court, and is not an unreasonable application of *Strickland*.

Petitioner further claims that counsel was ineffective for failing to consult or call an expert witness on the issue of recantation. Petitioner argues that Dutton's testimony, that those who are abused and eventually disclose their abuse commonly recant those allegations, was unsupported by the leading research in the field, which demonstrates that recantation is extremely uncommon among those children whose abuse can be verified.

- 31 -

Petitioner submits that "local psychologists such as Richard Hinton, Ph.D. were available to testify to the real state of the research." (Supplemental Petition at 14, Letter from Dr. Hinton dated March 27, 2008 (Petitioner's Ex. 17).) Dr. Hinton's letter to PCR counsel regarding the "state of the research as of September 2003 on recantation" established that articles published between 1994 and 1999 "consistently demonstrate that prior disclosure of sexual abuse predicts disclosure of abuse during formal assessments"; that articles published between 1994 and 2000 report that recantation rates in child sexual abuse cases range from 4 to 27 percent, and that when the sexual abuse has not been validated with certainty, the likelihood of recantations appears to be higher; and, that a 2005 research article on the subject, which Dr. Hinton had concluded was based on the studies published well before 2003, concluded that there is "little evidence to suggest that denials and recantations are typical." (Supplemental Petition, Ex. 17 at 1.)

Assuming arguendo failure to retain an expert was deficient performance, Petitioner cannot show he suffered prejudice as a result. Dutton testified at trial to very broad generalities, and not about L.'s accusations or recantations specifically. Dutton refrained from expressing that any particular percentage of children recanted, stating only that is was "not uncommon." Dutton's testimony did not create an impermissible inference that L.'s original accusation was credible notwithstanding her subsequent recantations. Petitioner's counsel elicited specific testimony about the inconsistencies in L.'s explanation for her recantations, and the motivations to falsely accuse Petitioner, specifically her dislike of Petitioner and desire to remove Petitioner from the home. In closing argument trial counsel went into great detail about the specific motives that L. had to falsely accuse Petitioner in order to have him removed from the house. Trial counsel also emphasized in closing arguments that Dutton knew "nothing about the case." (Ex. FF, RT 9//03, at 725.) In assessing the previously discussed new evidence claims, the trial court assessed Dutton's testimony as not of sufficient critical significance at trial that impeaching evidence probably would have changed the verdict or sentence.

(Ex. S, Ruling, 12/11/08 at 2-3) While Dr. Hinton's letter suggests that the incidence of recantation is not typical, nothing Petitioner presented to the state court challenged as inaccurate the reasons cited by Dutton as explanations offered for recantations when a true allegation has been made, such as: lack of parental support or protections; family siding with the perpetrator rather than taking the side of the victim; pressure from the family or perpetrator to recant; and negative personal consequences, such as being placed in foster care. Petitioner's proffer of an expert's report does not suggest that these reasons which were cited by Dutton for recantation are inaccurate. This was particularly important in this case because the emphasis of the testimony elicited by the State went to the reasons that L. might have recanted, and did not rely on Dutton's testimony that recantations are "not uncommon" in general. Counsel adequately challenged these reasons in this case. The Court finds that the expert testimony would not have improved this line of questioning, and that trial counsel's failure to call or consult an expert did not prevent counsel from effectively addressing the recantation evidence offered by Dutton. The trial court's ruling was not an unreasonable application of *Strickland*.

### 2. *Ground Two*[8]

Petitioner argues that trial counsel's advice about the merits of the plea offer was deficient for two reasons. First, trial counsel did not explain the terms of the plea agreement to Petitioner and never reviewed the agreement with him. Second, trial counsel evaluated the strength of the State's case in such a manner to fall below standards of practice for a case involving allegations of child molestation. Petitioner raised these claims in his PCR proceeding.

A defendant has the right to effective assistance of counsel when considering whether to accept or reject a plea offer. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (holding that the same two-part standard announced in *Strickland* is applicable to ineffective-assistance claims arising out of the plea process."). In the context of plea

---

[8] Ground Two is listed as Ground One of the original Petition.

agreements, an attorney provides ineffective assistance of counsel when both of the following conditions exist: (1) "the defendant must show that counsel's representation fell below an objective standard of reasonableness," *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 687–88); and (2) there exists "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In *Nunes v. Mueller*, the Ninth Circuit acknowledged that Supreme Court law had never explicitly addressed whether the right of effective assistance of counsel extends to a decision to reject a plea offer, and thus a state court decision rejecting such a claim could not be "contrary to" Supreme Court law. 350 F.3d 1045, 1053 (9th Cir. 2003). The court in *Nunes*, however, ultimately concluded that the right for a defendant to accept a plea is a right "clearly found in Supreme Court law." *Id*. at 1053. Respondents assert that this determination was based on the Ninth Circuit's interpretation of *Strickland*, and not any holding of *Strickland*, and thus there can be no finding of *Strickland* prejudice arising from plea bargaining if the defendant is later convicted at a fair trial because the Supreme Court has never held that a defendant who received a fair trial may state a claim based on advice in rejecting a plea. (Doc. 11 at 15-17.) Since Respondents' Answer was filed, the Supreme Court addressed the application of *Strickland's* prejudice prong to cases where a plea has been rejected and held "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012).

In applying *Strickland's* two-part test to the context of plea offers, the Arizona Court of Appeals has stated:

> To establish deficient performance during plea negotiations, a petitioner must prove that the lawyer either (1) gave erroneous advice or (2) failed to give information necessary to allow the petitioner to make an informed decision whether to accept the plea. [Citations omitted.] ...
>
> To establish prejudice in the rejection of a plea offer, a defendant must show "a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer" and declined to go forward to trial. [Citations omitted.]

*Arizona v. Donald*, 198 Ariz. 406 (App.2000).

The trial court found a colorable claim regarding the argument that trial counsel was ineffective in not explaining the proposed plea agreement, and held an evidentiary hearing. (Ex. O.)  Both trial counsel and Petitioner testified at the evidentiary hearing. (Ex. Q.) The trial court issued a ruling denying the claim, and made the following findings. The defendant and trial counsel appeared in court on February 10, 2003, at which time the prosecutor gave them a proposed plea agreement, and requested that a record be made pursuant to *Donald*, 198 Ariz. 406.[9] (Ex. S, at 5.) Because counsel and Petitioner had not had a chance to review and discuss the plea agreement, which was to a probation eligible offense, the *Donald* hearing was not held at that time, and was ultimately never rescheduled. Petitioner claimed in his affidavit that counsel never discussed the plea agreement with him, and that he would have seriously considered it at that time. (*Id*.) Counsel testified at the hearing that he did discuss the plea agreement with Petitioner, and that Petitioner was not inclined to accept the plea agreement, both because the case against him was weak (the victim had recanted previously) and because pleading to a dangerous crime against children would cost him his job as a school bus driver. (*Id*.) The trial court found that, although the presentation of the plea was not the reason for the

---

[9] Arizona courts conduct a *Donald* hearing to ensure that the defendant has been informed of the content of the State's plea offer, where one had been made, and that the defendant understands the consequences of a decision to reject the offer. *See Donald*, 198 Ariz. 406.

hearing held on February 10, 2003, the court "fully explained the terms of the plea agreement to the defendant and explained the consequences of being convicted at trial." (*Id.*) (citing RT 2/10/03 at 24-30.) The trial court considered whether counsel's performance was deficient under the test laid down in *Donald*: To establish deficient performance during plea negotiations, a petitioner must prove that the lawyer either (1) gave erroneous advice, or (2) failed to give information necessary to allow the petitioner to make an informed decision whether to accept the plea. (*Id.* at 6) (citing *Donald*, 198 Ariz. at 413.) The trial court found Petitioner was arguing that counsel's performance was deficient under the second part of the test, but that petitioner failed to demonstrate either deficient performance, or prejudice. (*Id.*) Specifically, the trial court found:

> As trial judge this court has had the opportunity to observe Mr. Leon's trial testimony and to observe the demeanor of both the defendant and trial counsel at the hearing in this matter, and finds that Mr. Lopez' testimony is more credibile [sp] than that of Mr. Leon. The court does not find that Mr. Lopez failed to give the information necessary for his client to make an informed decision whether to accept the plea in this case. The court also finds that Mr. Leon was fully informed of the sentence ranges under both the proposed plea and the offenses in the indictment. The court further finds that there is no meaningful likelihood that this defendant would have taken the plea agreement under any circumstances, given the likelihood of losing his job and the properly perceived weakness of the state's case. In addition the court, having heard defendant's trial testimony as well as his testimony at the hearing in this matter, finds that the defendant could not have made an appropriate factual basis for a guilty plea.

(*Id.*) Petitioner presented the same claim in his petition for review to the appellate court, which denied relief without comment. (Ex. V at 9 and Ex. W.)

The state court record supports the appellate court's rejection of Petitioner's allegation that counsel had rendered deficient performance. At the hearing, Leon's counsel testified that he had received information from the State regarding a plea offer for his client and that he had discussed the offer status of the case and that a plea offer had

been made with Petitioner in counsel's office before a hearing on February 10, 2003. (Ex. R, RT 10/29/08 at 10–13.) He further testified that after receiving the plea agreement he gave a copy of the agreement to petitioner, and discussed the plea agreement with him, as well as the possibility of prison time. (*Id.* at 15.) He also testified that he had previously discussed with Leon that the charges he was facing were "very serious" and "he was potentially looking at a substantial period of time in prison," *i.e.*, 17 to 24 years. (*Id.* at 14–15.) He said he had reviewed the State's evidence with Leon, and that Leon had expressed concern about his prospects of employment (he was a school bus driver) if he accepted a plea agreement. (*Id.* at 17, 24–27.) And he testified that Leon had maintained throughout that he was innocent of the charges and did not want to accept the State's offer. (*Id.* at 27–28.) The state court found this testimony credible.

State court findings are generally presumed correct unless they are rebutted by clear and convincing evidence or based on an unreasonable evidentiary foundation (Sections 2254(e)(1) and (d)(2); *Gonzalez v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003)). "Surmounting *Strickland's* high bar is never an easy task." *Richter*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356 371 (2010)). Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult, because both standards are "highly deferential," and because *Strickland's* general standard has a substantial range of reasonable applications. *Richter*, 131 S.Ct. at 788 (citations omitted). Given the standards of review, this Court cannot find the decision unreasonable. The trial court found credible the testimony of trial counsel that counsel had informed Petitioner of the plea agreement, its terms, and the sentencing ranges. We presume the correctness of credibility determinations made at the trial court level. *See* 28 U.S.C. § 2254(e) (providing that a factual determination by the state court "shall be presumed to be correct"); *see also Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998) (federal habeas courts have no license to "redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.")(citations omitted).

Petitioner has failed to present any evidence rebutting the presumption of correctness that attaches to the state court's finding that Petitioner's claim of both deficient performance and prejudice was unsubstantiated. Petitioner has not demonstrated an unreasonable application by the State court of the *Strickland* standard, and thus, the Court denies this claim.

### 3. Ground Three and Four

In Ground Three Petitioner argues that trial counsel was ineffective for failing to call two witnesses who had observed and would have testified regarding L.'s "sexual behavior with other boys," including "giving lapdances" to one of the witnesses. The trial court rejected this claim, stating that "[c]alling such witnesses was solely a matter of trial strategy and might well have backfired." (Ex. S at 3.) In Ground Four, Petitioner argues that trial counsel was ineffective for failing to call Petitioner's younger sister, Lizette Estrada, who wished to testify as a character witness on behalf of her brother. Petitioner asserts that Estrada would have testified that Petitioner took care of Estrada as a baby, including for a time sharing a bed with her when she was a little girl, and that Estrada informed trial counsel that Petitioner was always appropriate with her and never did anything that would constitute sexually aberrant behavior, and that neither she nor anyone else in her family ever observed Petitioner act inappropriately toward children. (Supplemental Petition, citing Ex. 22, Affidavit of Lizette Veronica Estrada.) The trial court rejected the claim, relying on Petitioner's statement that counsel had told him that "he did not think this testimony would help [Petitioner] at trial because the prosecution would paint Leon as interested only in black women" and finding that "[w]hile this is an unusual statement this [is] a classically strategic decision." (Ex. S at 3)

To prove ineffective assistance of counsel, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689. The trial court did not unreasonably apply *Strickland* in finding that Leon's counsel's decision to not call these witnesses was

- 38 -

a matter of trial strategy that did not fall below the standard of reasonableness. Petitioner has not shown that his trial counsel's handling of his case fell outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Furthermore, Petitioner has not demonstrated prejudice. Petitioner argues that the fact witnesses' testimony would have opened the door to further admission of L.'s sexual activities, specifically, the admission of the so-called "lapdance" letter. Together, this testimony and evidence would have been admissible as providing motive for L. to fabricate her allegation. Given the already ample evidence of motive in this case, the evidence that L. was already in trouble with her mother for hanging around boys without permission or approval, the Court finds that evidence of L.'s sexual activity would not have cast sufficient doubt on her credibility such that there would have been a reasonable probability that the verdict would have been different. The Court also finds that the testimony of Estrada would not have affected the outcome of the trial. Crediting counsel with Petitioner's assertion that trial counsel did not call her as a witness because her testimony as to any lack of aberrant behavior on Petitioner's part towards her could be perceived as due to sufficient dissimilarity between her race or ethnicity and the victim's, additional dissimilarities between the witness and the victim would have further rendered this testimony less persuasive: Estrada testified that she and Petitioner slept in the same bed when she was an infant and a "little girl," the victim, on the other hand, was an adolescent pre-teen when the abuse occurred; additionally, Estrada was a sister of Petitioner's, while the victim, being the daughter of Petitioner's girlfriend, was not related to Petitioner in any way. This Court's review on a federal habeas petition requires Petitioner to show that the state court's rejection of his claim of ineffective assistance of counsel was contrary to clearly established federal law, was based on an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts considering the evidence presented in state court. Petitioner has not met that standard here.

1

2

### 4.    Ground Five

Petitioner asserts that trial counsel was ineffective for failing to object to the prosecutor asking leading questions during direct examination of the victim. This claim was presented to the trial court. The court rejected the claim, finding that "whether or not to object" to the form of questions was a matter of trial strategy. The trial court considered the circumstances of the case, noting that objection to the form of questions can be perceived by the jury as an unfair attack on the victim, furthermore, counsel could have thought that the witness was not doing well, and that the jury was having a negative reaction to her testimony. (Ex. S, at 3-4.)

The trial court did not unreasonably apply *Strickland* in finding that trial counsel's decision to not call these witnesses was a matter of trial strategy that did not fall below the standard of reasonableness. "[F]ailure to object to leading questions and the like is generally a matter of trial strategy as to which [courts] will not second guess counsel." *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993). Even assuming that counsel objected on the basis that the prosecutor was leading the witness, in Arizona, a trial court has discretion to allow leading questions during direct examination of minor witnesses. *See Arizona v. Jerousek*, 121 Ariz. 420, 426 (1979). L. was thirteen, and review of the trial transcript reveals that she had trouble remembering things, and was perhaps reluctant to testify or was having difficulty testifying against her mother's boyfriend. Furthermore, Petitioner has failed to show how the leading questions prejudiced Petitioner's defense. Petitioner argues that "had [L.] been required to testify on her own, without being led by the prosecutor, it is almost certain that her testimony would have been different. For example, she may have maintained her recantation of the allegations." Petitioner concludes that "[b]ecause [L.'s] testimony would have been different without the leading questions to direct her, it is reasonable to conclude that the jury would have acquitted the Petitioner." This conclusion is both conclusory and speculative, and not supported by the record. The trial court did not unreasonably apply *Strickland* in finding that trial

counsel's decision to not object to the leading questions was a matter of trial strategy that did not fall below the standard of reasonableness.

### 5.   *Ground Six*

Petitioner argues that trial counsel was ineffective for failing to seek reconsideration of the trial court's order precluding relevant evidence. Specifically, a letter known as the "lapdance letter," which was a note written from L. to a friend, demonstrating L.'s sexual knowledge and experiences with boys her own age, was precluded by the trial court as inflammatory and prejudicial. The trial court left the door open for use of the letter as impeachment "if the prosecutor puts the victim's prior sexual conduct in issue." (Ex. AA at 14-15.)

Leon presented this claim that his counsel should have sought reconsideration of this order because the prosecutor had elicited testimony about the victim's lack of sexual knowledge in his PCR proceeding. (Ex. M at 23.) The only fact he cited in support of this argument is that the prosecutor asked the victim whether she knew what a vagina is. (*Id.*) The trial court resolved this issue by finding that the prosecutor's question did not open the door sufficient to allow reconsideration of the ruling "and the court would not have allowed the introduction of the letter solely because of this one question." (Ex. S.) Leon presented this claim in his petition for review to the Arizona Court of Appeals, which denied relief without comment. (Ex. V at 24, and W.)

The trial court did not unreasonably apply *Strickland* in finding that Leon's counsel's decision to not seek reconsideration of the trial court's ruling did not fall below the standard of reasonableness. Nothing about the question or the answer implied to the jury that the victim lacked sexual knowledge or put the victim's sexual conduct in issue:

Q:     Do you remember what area he touched you?

A:     On my – the area where my private spots are.

Q:     And just so I'm clear, when you mean "private spots", what are you

1    referring to? Do you want me to say the word?

2    A:    Yes

3

4    Q:    Are you referring to your vagina?

5    A:    Yes.

6    Q:    Do you know what a vagina is, [L,]?

7

8    A:    Yes

9    The prosecutor asked her the question in the context of clarifying what she meant

10   by referring to her private spots." (Ex. BB, RT 9/24/03 at 162.) The question did not

11   pertain to the victim's sexual conduct or knowledge beyond merely inquiring whether the

12   victim knew some basic vocabulary for purposes of clarifying her testimony.

13   Furthermore, the trial court indicated in its ruling on Petitioner's PCR that, even had

14   Leon's counsel moved for reconsideration based on that question, he would not have

15   been successful. Counsel cannot be ineffective for doing that which would have been

16   futile. *See Rupe v. Wood*, 93 F.3d 1434, 1444- 1445 (9th Cir. 1996) ("[T]he failure to take

17   a futile action can never be deficient performance.")

18   **IV.   CONCLUSION**

19   The Court finds that Petitioner procedurally defaulted Grounds Seven and  Eight

20   of the Amended Petition. Grounds One through Six of the Amended Petition are without

21   merit and are denied with prejudice.

22   Accordingly,

23   IT IS ORDERED that the amended petition for writ of habeas corpus pursuant to

24   28 U.S.C. § 2254 (Doc. 59) is DENIED.

25   The Clerk is directed to prepare a judgment and close the case.

26   //

27   //

28

1

CERTIFICATE OF APPEALABILITY

2

3          In the event Petitioner appeals from this Court's judgment, and in the interests of

4   conserving scarce resources that otherwise might be consumed drafting an application for

5   a certificate of appealability to this Court, the Court on its own initiative has evaluated

6   the claims within the Amended Petition for suitability for the issuance of a certificate of

7   appealability. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th

8   Cir. 2002).

9          Rule 22(b) of the Federal Rules of Appellate Procedure provides that when an

10  appeal is taken by a petitioner, the district judge who rendered the judgment "shall" either

11  issue a certificate of appealability ("COA") or state the reasons why such a certificate

12  should not issue. Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the

13  petitioner "has made a substantial showing of the denial of a constitutional right." With

14  respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable

15  jurists would find the district court's assessment of the constitutional claims debatable or

16  wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463

17  U.S. 880, 893 & n. 4, (1983)). For procedural rulings, a COA will issue only if

18  reasonable jurists could debate (1) whether the petition states a valid claim of the denial

19  of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

20         The Court finds that reasonable jurists could debate its resolution of Ground One

21  of the Amended Petition. The Court therefore grants a certificate of appealability as to

22  this claim. For the reasons stated in this Order the Court declines to issue a certificate of

23  appealability for Petitioner's remaining claims and procedural issues.

24         Dated this 24th day of January, 2014.

25

26

27  _____

    Bernardo P. Velasco

28  United States Magistrate Judge

- 43 -